IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| EMILY C. KELLINGTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 5:14-cv-2 |
| | ) | |
| BAYER HEALTHCARE | ) | By: Elizabeth K. Dillon |
| PHARMACEUTICALS, INC., *et al.*, | ) | United States District Judge |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is the motion of defendants (collectively Bayer) titled as a a "Motion to Issue Letter of Request to Third Party in Canada to Conduct Fact Discovery." (Dkt. No. 106.) In it, Bayer requests that the court issue a "Letter of Request addressed to the Appropriate Judicial Authorities of Canada . . . so it may collect documents relating to an article written by plaintiff's former testifying expert, Dr. Mahyar Etminan . . . ." (*Id*. at 1.) Bayer also seeks to depose Dr. Etminan as a fact witness. (*Id.* at 3.) The motion has been fully briefed, and no party has requested a hearing. For the reasons set forth herein, the court GRANTS the motion, and will issue a revised version of the "Request for International Judicial Assistance," included as Exhibit A to Bayer's Supporting Memorandum, Dkt. No. 107-1.

The parties are familiar with the factual background of this case, and the court will not repeat it in any detail here. Dr. Etminan is the author of a scientific article entitled: *Risk of intracrancial hypertension with intrauterine levonorgestrel*, 6 THER. ADV. DRUG SAFETY 110 (2015) (the Etminan Article). He also was retained by plaintiff as a testifying expert in this case, and he testified at a deposition noticed by Bayer. The parties were working to schedule a second

day of deposition (albeit in a related case), when Dr. Etminan announced that he would no longer be serving as an expert witness in any of the cases related to Mirena.[1]

Bayer contends that the findings and conclusions in the Etminan Article "appear suspect." (Bayer's Mem. Supp. Mot. to Issue Letter of Request 2, Dkt. No. 107.) It further points out that Kellington's "remaining experts continue to claim reliance on Dr. Etminan's publication to support their general causation opinions." (*Id.*)  In order to be able to challenge adequately the other experts' reliance on the Etminan Article, Bayer contends that it needs to conduct standard fact discovery concerning the Article. It therefore seeks: "(1) documents detailing Dr. Etminan's data, calculations, communications, and other materials related to his article; and (2) an opportunity to depose Dr. Etminan as a fact witness." (*Id.* at 3.)  It has provided a proposed "Request for Assistance" that requests the assistance from the Supreme Court of British Columbia, where Dr. Etminan works, and includes a statement that it will reimburse that court for all expenses incurred and also provide certain reimbursements to Dr. Etminan.

Plaintiff opposes the motion. She argues first that Dr. Etminan has already been deposed, so Bayer has already had the opportunity to ask about the methodology and results of his study. (Pl.'s Resp. to Defs.' Mot. to Issue Ltr. of Request 2, Dkt. No. 119.) Kellington further explains that—as her counsel has conveyed to Bayer—Dr. Etminan looked for documents related to the 2015 study and Article subsequent to his deposition and does not have any additional documents.[2]  Plaintiff's counsel has also advised that Dr. Etminan will "no longer have any communications with any attorneys on this matter." (*See generally id.* (noting that response as

---

[1] The parties dispute the reasons for his withdrawal, but the reasons are irrelevant for present purposes.

[2] The court notes, however, that Kellington's counsel does not represent Dr. Etminan, nor has Dr. Etminan asserted under oath that he has no additional documents related to the Article, or documents otherwise responsive to Bayer's requests.

2

to a number of categories of documents sought by Bayer).)  Kellington also posits that allowing Bayer to obtain this additional discovery or to depose Dr. Etminan again as a fact witness would "set[] a dangerous precedent." (*Id.* at 16.)  She cautions that allowing third-party medical researchers to be deposed could "open the floodgates to countless depositions and may have a chilling effect on the very researchers upon whom we rely to advance the scientific agenda." (*Id.* at 17.) [3]

The court has carefully considered the arguments of the parties, and concludes that, under the specific and unique facts of this case, the requested discovery should be allowed.[4]  The discovery sought falls within the scope of Rule 28(b), which allows a letter of request to be issued "on appropriate terms after an application and notice of it."  Fed. R. Civ. P. 28(b)(2). Furthermore, there is no blanket prohibition set forth in the discovery rules against discovery directed to third-party academics, *see* Fed. R. Civ. P. 26, and plaintiff has not cited to any cases binding on this court stating that there is any recognized privilege of an academic or scholar to avoid discovery.  Indeed, at least one district court within the Fourth Circuit has concluded there is no such privilege.  *Anker v. G.D. Searle & Co.*, 126 F.R.D. 515, 519 (M.D.N.C. 1989) ("[N]on-retained or involuntary experts or researchers do not have any federal statutory, case law or common law privilege which protects against their having to involuntarily share their expertise with the parties in the litigation.").  *See also Burka v. U.S. Dep't of Health & Human Servs.*, 87 F.3d 508, 521 (D.C. Cir. 1996) (discussing, in context of addressing a FOIA request,

---

[3] Kellington also relies on a supposed "admission" contained in an email from Bayer's counsel, in which Bayer's counsel was requesting documents related to Dr. Etminan.  In that email, Bayer's counsel suggested that if Dr. Etminan were withdrawn as an expert, Bayer's requests would be moot.  The court has reviewed the email, and its context, and finds no such binding admission.

[4] The court recognizes that the deadlines for both fact and expert discovery have passed and that Bayer's motion was not filed until after the close of expert discovery.  Plaintiff has not challenged the requested discovery as being untimely, though.  Furthermore, from the correspondence provided to the court, it appears that there were communications between counsel beginning before the expert discovery deadline, in which they attempted to arrive at a mutually satisfactory solution.  So, the court will allow this discovery beyond the discovery deadline, but notes that its ruling does not re-open discovery in its entirety.

3

various cases addressing the general issue of such a privilege and concluding, that "at this juncture in the development of the law, we cannot say that there is an established or well-settled practice of protecting research data in the realm of civil discovery on the grounds that disclosure would harm a researcher's publication prospects"); *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, No. 4:12-mc-508, 2012 WL 4856968, at *2 (E.D. Mo. Oct. 12, 2012) ("[T]he Eighth Circuit has not addressed the existence of an academic or scholar's privilege as a defense to subpoenas calling for the production of research data, and the majority of courts outside this Circuit that have considered the issue have declined to recognize it.").

Even among courts that have been more sympathetic toward such a qualified privilege, or that have otherwise quashed subpoenas directed toward the discovery of such information, those courts were concerned about confidentiality or premature disclosure, *see, e.g.*, *Deitchman v. ER Squibb & Sons, Inc.*, 740 F.2d 556, 560 (7th Cir. 1984) (assuming *arguendo* that such a privilege exists and discussing confidentiality, but concluding that discovery should be permitted), or they determined that the subpoena had to be quashed to prevent "preemptive or predatory publication by others," *see, e.g.*, *Application of Am. Tobacco Co.*, 880 F.2d 1520, 1529 (2d Cir. 1989); *cf. Retractable Techs., Inc. v. Int'l Healthcare Worker Safety Ctr.*, No. 3:11-mc-28, 2011 WL 3555848, at *3 (W.D. Va. August 11, 2011) (refusing to quash a subpoena directed at uncovering underlying research where confidentiality concerns could be adequately "safeguarded by means of a protective order"). Those issues are not implicated here since Dr. Etminan's article has already been published, and any confidentiality concerns can be addressed via a protective order.

There being no privilege or prohibition against disclosure, the discovery sought is governed by the general discovery rules, which the court concludes allow the discovery,

4

particularly under the unique facts of this case. Those facts include that Etminan was previously identified and deposed as an expert, but then withdrew before all of his deposition testimony could be completed. The court also finds it significant that plaintiff's other causation experts all rely on the Etminan Article,[5] which is the only article published in a peer-reviewed journal on the topic. (Pl.'s Resp. 17 (acknowledging that another study, the Rai/Digre study, may not be a fully published "article" but is a study that was published in a journal).) As such, the Etminan Article is important and central to the crucial and disputed issue of causation in the case.

For the foregoing reasons, the court GRANTS Bayer's motion (Dkt. No. 106) and will separately execute a revised Request for International Judicial Assistance.

Entered: September 23, 2016.

/s/ Elizabeth K. Dillon
United States District Judge

---

[5] Bayer states that plaintiff's experts continue to rely upon the Etminan Article, and she does not deny this. (Defs.' Mot. 2, Dkt. No. 106; Defs.' Reply 3 n.2, Dkt. No. 141.)

5